## PARROTT v. GULICK et al.

No. 19678.   Opinion Filed Sept. 30, 1930.

Billups & Billups, for plaintiff in error.

Fred. E. Suits, for defendant in error.

LESTER, V. C. J.   The parties appear in the reverse order to that in the district court, and for convenience will be referred to as they appeared there.

The plaintiffs brought an action in the district court to restrain the defendant from selling, under a chattel mortgage, a certain automobile that the plaintiffs had purchased from the defendant and also to cancel an indebtedness alleged to be due thereon.

The defendant filed an answer and cross-petition and asked for judgment on the unpaid balance due on the car.

The cause was tried to the court, and the court denied the plaintiffs the amount paid the defendant on the purchase of the car, and also denied the defendant any recovery on the unpaid balance due on the car.   The defendant has appealed from the judgment denying a recovery on the unpaid balance alleged to be due on the car.

The following is the defendant's statement of the legal proposition involved on appeal:

"Did the fact that registered dealer in used automobiles in this state in making a sale of a used car, and taking a note and mortgage thereof, and failing to deliver a certificate of title to the purchasers, render the note and mortgage so executed void by reason of the failure to deliver a certificate of title to the purchaser?"

Section 3 of chapter 43, Session Laws 1925, provides:

"In the event of the sale or transfer after the passage of this act, of the ownership of a motor vehicle for which a certificate of title has been issued as aforesaid, the holder of such certificate shall indorse on the back of same an assignment thereof with warranty of title in form printed thereon with a statement of all liens or incumbrances on said motor vehicle, sworn to before a notary public or some other person authorized by law to take acknowledgments, and deliver the same to the purchaser or transferee at the time of the delivery to him of such motor vehicle.   The purchaser or transferree, unless such person is a dealer licensed under section fourteen (14) of this act, shall, within ten (10) days thereafter, present such certificate assigned as aforesaid, to the Highway Commission, or its authorized agents, accompanied by a fee of one (1) dollar, whereupon a new certificate of title shall be issued to the assignee.   Said licensed dealer shall, on selling or otherwise disposing of said motor vehicle, execute and deliver to the purchaser thereof an affidavit of conveyance or assignment in such form as the Highway Commission shall prescribe to which shall be attached the assigned certificate of title received by such dealer.   Thereupon the purchaser of said motor vehicle shall apply for and receive from the Highway Commission, or its authorized agents, a certificate of title; provided, when a motor vehicle is sold or otherwise transferred to another dealer licensed under section fourteen (14) of this act, transfer of title may be made by endorsing on the back of certificate of title in a place provided for such transfer; provided, however, said motor vehicle remains in dealer's place of business for sale and for no other purpose.   Said certificate when so assigned and returned to the Highway Commission, together with any subsequent assignments or reissues thereof, shall be retained by the Highway Commission and appropriately filed and indexed, so that at all times it will be possible to trace title to the motor vehicle designated

therein; provided, when the ownership of any motor vehicle shall pass by operation of law, the person owning such motor vehicle may upon furnishing satisfactory proof to the Highway Commission, or its authorized agents, of such ownership, procure a title to said motor vehicle regardless of whether a certificate of title has ever been issued. Dealers shall execute and deliver to the purchaser, bills of sale or affidavit of conveyance, in accordance with form prescribed by the Highway Commission for all new motor vehicles sold by them. On the presentation of a bill of sale, or affidavit of conveyance, executed in the form prescribed by the Highway Commission, by a manufacturer or dealer for a new motor vehicle sold in this state, a certificate of title shall be issued in accordance with the provisions of this act."

Section 18 of said act also provides:

"Any person violating any of the provisions of this act, unless otherwise specially provided for in this act, shall, upon conviction, be subject to a fine or penalty of not more than three hundred ($300.00) dollars or imprisonment in the county jail for a period not exceeding ninety (90) days, or by both such fine and imprisonment."

An examination of the various briefs filed by both parties in the case shows a thorough research by them of the question involved. and it is also shown that there is a great diversification of opinion among the courts of the several states that have passed upon the question presented here on appeal.

In considering the question before us there are several elements that must be considered, among them being:

Did the statutes render the sale void without a delivery of a certificate of title? Do the sale and delivery of title constitute separate acts? Does the sale to and payment by the vendee, followed by a delivery to him of the car, constitute such acts that in the absence of a certificate of title vest in the vendee ownership? Does the statute merely intend that the issuance of certificate of title is regulatory only and the failure to do so renders the vendor subject to the specific penalty, and in addition thereto render the sale null and void? Can the vendee without demanding a certificate of title accept the possession of the car, use it for several months, and then return it without making compensation to the vendor?

The statutes fail to provide that in the absence of a delivery of the certificate of title the transaction is void.

It will be noted in section 3, supra:

"Said licensed dealer shall, on selling or otherwise disposing of said motor vehicle, execute and deliver to the purchaser thereof an affidavit of conveyance or assignment in such form as the Highway Commission shall prescribe, to which shall be attached the assigned certificate of title received by such dealer."

There it is seen that the licensed dealer on selling and disposing of a motor vehicle must execute certain instruments of conveyance.

It is seen that the sale of a motor vehicle and the execution of certificate of title are separate acts. Certainly, if the vendee has bought and paid for a motor vehicle, and the dealer thereafter sought to avoid the sale because he had failed to issue a certificate of title, could there be any doubt that the vendee would be entitled to successfully maintain an action against the vendor for the possession of the car? In our judgment the execution of the title is regulatory, only subjecting the seller to a fine or imprisonment or both in case of failure to issue said certificate of title in case of sale or transfer of the car.

In the instant case the plaintiffs had possession of the car several months, made payments thereon for several months, and then finally returned the car to the defendant without demanding a certificate of title. We believe that the law should be so construed as will better serve justice and right. The law should never place a stamp of approval upon the acts of persons seeking an undue advantage.

The plaintiff at any time after the sale could have compelled the defendant to deliver a certificate of title to him. To us it clearly appears that the failure of the defendant to deliver a certificate of title was an afterthought of the plaintiffs in order to defeat the debt created by them.

The identical question here presented has never been before this court.

In the case of Hughes v. Snell, 28 Okla. 828, 115 Pac 1105, thiscourt had before it the question as to whether or not a real estate agent who failed to procure an annual license tax could collect a commission on a sale made by him.

This court there said:

"It was not an act to prohibit a business nor to render contracts made by parties void and unenforceable merely for the reason that the license tax had not been paid. The only penalty prescribed is that of a fine, and we believe that this was all that was ever intended."

In the case of Manker et al. v. Tough, 79

Kan. 49, 98 Pac. 792, Mr. Justice Smith, speaking for the court, said:

"Why should one party to a contract be allowed to avoid the payment of debt he has contracted to pay and thus gain an unconscionable advantage because the other party deliberately, or through inability or mere oversight, has failed to discharge an obligation to the city (state) when there is available to the city (state) both a civil remedy for the wrong and a penal remedy against the wrongdoer?"

The sale of the car and the execution of the notes were not prohibited by the statutes, and nowhere in chapter 43, supra, is it provided that the sale of a car is void for the failure to deliver to the purchaser a certificate of title.

In 13 C. J. 422, it is said:

"And it would seem that in all cases the true rule is that the question is one of legislative intent, and the courts will look to the language of the statute, the subject-matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if from all these it is manifest that it was not intended to imply a prohibition or to render the prohibited act void, the courts will so hold and will construe the statute accordingly."

In the case of Hartford Fire Ins. Co. v. Knight (Miss.) 111 So. Rep. 748, it appears that the vendor did not execute a certificate of title as provided by chapter 222, section 2, Laws 1920 (Miss), which is as follows:

"It shall be unlawful for any person, firm, or corporation, to sell, purchase or own any automobile unless the seller shall furnish to and the buyer shall take and reserve, a written memoradum, signed by the seller, showing the make and model, motor number and other identifying marks thereof, the address of the seller, the name and address of the person from whom the seller purchased, which memorandum shall also be signed by two well-known persons as witnesses whose address and occupation shall be shown, which memoradum may be in the following form. * * *"

The above statute was not complied with in the sale of an automobile and it was there contended that the sale was void because of the violation of such statute, and the court in passing upon the question said:

"If the contract by which the appellee purchased the automobile should be held void because of formalities required therefor by the statute were not complied with, nevertheless, since the possession of the automobile was delivered to him by the seller, he became thereby, for all practical purposes, the owner of the automobile.

Foster v. Wooten, 67 Miss. 540, 7 So. 501, 28 R. C. L. 1323.

"But it is not necessary for us to rest our decision on this ground, for the contract by which the automobile was purchased was not void. The rule that a contract made in violation of a statute is void is not absolute, for such a contract is, of course, not void if it appears from the statute prohibiting the making of it that the Legislature did not so intend. It is true that 'when the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void, Harris v. Runnels, 12 How. 79, 13 L. Ed. 901. But in determining whether 'the contrary can be properly inferred,' 'the courts will look to the language of the statute, the subject-matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment, and if from all these it is manifest that it was not intended to imply a prohibition or to render the prohibited act void, the courts will so hold and will construe the statute accordingly.' 13 C. J. 422; vol. 3, Williston on Contracts, section 1764; 2 Elliot's Contracts, section 668; Young v. Insurance Co., 91 Miss. 710, 45 So. 706; Huggleston v. McMillan, 112 Miss. 168, 72 So. 892; Simmons v. Galloway, 138 Miss. 669, 103 So. 350."

If a purchaser of a car fails to demand a certificate of title at the time of the sale and delivery of the car to him, he may not be permitted to use the car a long period of time and then return it and escape liability on the original contract.

When a car is sold and delivered to the vendee without a certificate of title, the vendee can maintain his ownership and possession against everyone. This being true, why should he not be compelled to pay for the enjoyment of such ownership?

In the case of Dunlop v. Mercer, 156 Fed. 545, the court succinctly stated the rule to be:

"The general rule that an illegal contract is void and unenforceable is, however, not without exception. It is not universal in its application. It is qualified by the exception that where a contract is not evil in itself, and its invalidity is not denounced as a penalty by the express terms of or by rational implication from the language of the statute which it violates, and the statute prescribes other specific penalties, it is not the province of the courts to do so, and they will not thus affix an additional penalty not directed by the lawmaking power."

In the case of Hennessy v. Automobile Owners' Insurance Association (Tex.) 282 S. W. 791, the court had before it the ques-

tion as to the right and ownership of a car sold in violation of an act making it unlawful to sell or trade second-hand motor vehicles without transferring by indorsement the name of the person to whom said license fee receipt was issued by the tax collector.

The court in that case held:

"The act does not expressly provide that sales made without complying with the requirements shall be void. A sale, however, is a necessary incident to a failure to comply with the regulatory requirements; and, if the contract of sale is to be held void, it must be because it will be implied that it was the intention of the Legislature that this should result from the failure to do that which the statute requires. Whether it should be implied that it was the intention of the Legislature that such sale should be void depends upon the effect which should be given the language used in the act, and the effect to be given is controlled in a large measure by the purpose in view when the law was enacted. If the evil for which a remedy was sought was inherent in the sale itself, and the purpose was to correct the evil, it should be implied that the intention was to prohibit the sale and thereby render it void. If, on the other hand, the purpose was to correct an evil which bore no direct relation to the contract of sale, the courts would not be warranted in holding that it was the intention to declare such a sale void: for, in the latter case, the sale would be a mere incident wtihout any direct relation to the crime committed.

"If the evil was the fraudulent sale and transfer of secondhand motor vehicles, and the purpose of this act was to correct this evil, and thereby protect the public from fraud and imposition, a sale without the transfer and delivery of the receipt and execution and delivery of bill of sale would be evidence of a fraudulent transaction and result in a legal presumption of fraud, which would render the contract void. The vice of wrong denounced by the act would inhere in the sale itself. The failure to comply with the requirement would brand the sale as a fraudulent one. In such case it should be inferred that it was the intention of the Legislature that the contract of sale should not have the effect to transfer title.

"The purpose for which this act was passed is clearly expressed in the caption of the bill. It is to prevent the theft of motor vehicles. We may not presume that the purpose was other than that expressed. Its purpose was not to prevent fraudulent sales and transfers. The theft of motor vehicles has no relation to sales and transfers, and can therefore furnish no ground for legal inference that it was the intention of the Legislature to prevent such sales and thereby render unenforceable contracts in regard

to property. This it seems to us is clear. To ascribe to the Legislature the intention to do a thing which is wholly irrelevant to the purpose plainly expressed in the enactment itself would be doing violence to all rules of legal construction. When the language used in the statute, the evil for which remedy is sought, and the effect of holding contracts void when entered into without complying with the requirements made, are all taken into consideration, we think it is manifest that the Legislature had no intention to declare void sales made where the acts required are not performed."

Counsel for the plaintiffs have submitted cases contrary to the cases herein cited, but we think the rule laid down by the cases herein set forth are more in harmony with a correct construction that should be placed upon chapter 43, supra, and that such construction promotes justice and right.

Chapter 43, supra, does not attempt to make the sale of a motor vehicle void in not complying with the regulatory provisions thereof.

The sale is not inherently illegal and void. The failure to furnish a written evidence of title is a violation of regulatory requirement and made punishable by statutes of this state.

Judgment is reversed in so far as it relates to the denial of the defendant's recovery on the notes and mortgage executed by plaintiffs, with instructions to proceed in said cause not inconsistent with the views herein expressed.

MASON, C. J., and HUNT, CLARK, HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur.

RILEY, J., absent.

Note.—See under (3) 6 R. C. L. pp. 806-809.